**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ALICIA A. COHEN,<br><br>                    Plaintiff,<br><br>          v.<br><br>RONALD A. COHEN, a/k/a Rafi Cohen, Raphael Cohen, Rapha-El Cohen, Raphael Chaim Ha Cohen, Raphael Chaim Cohen, Ron Cohen, and Ronnie Cohen,<br><br>                    Defendant. | C.A. No. 19-1219-MN<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED VERIFIED COMPLAINT
FOR CHILD SEXUAL ABUSE AND HUMAN TRAFFICKING**

Plaintiff Alicia A. Cohen files this First Amended Complaint for child sexual abuse and human trafficking against Ronald A. Cohen, and in support thereof alleges as follows:

**INTRODUCTION**

1.       When Plaintiff was 3–5 years old, Defendant began sexually abusing her, selling her to others for commercial sex, filming acts of child rape, and selling the pornographic tapes. Defendant claims to be a minister, and used various ministries as covers for his child sex trafficking ring. He had several accomplices, many of whom also claimed to be ministers. Other children were victims in addition to Plaintiff. The direct sexual trafficking of Plaintiff continued until she was 11 years old. Defendant continued thereafter to threaten Plaintiff should she report his crimes. Upon information and belief, the sex trafficking ring continued with other victims, and Defendant continued selling tapes containing child pornography. Defendant's activities constitute child sexual abuse in violation of the laws of several states, and human trafficking in violation of federal

and state laws. Defendant's abuse and trafficking resulted in extreme emotional and physical harm to Plaintiff and others.

## THE PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Alicia A. Cohen is a resident of the State of Delaware.

3.      Defendant Ronald A. Cohen is a resident of North Carolina, with a last known address in Leland, North Carolina. At the time of most of the direct abuse and sex trafficking, Defendant was a resident of the State of Delaware. He also goes, or has gone, by the following names: Rafi, Raphael, Rapha-El, Raphael Chaim Ha Cohen, Raphael Chaim Cohen, Ron, and Ronnie.

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 because the principal claims arise under the laws of the United States: 18 U.S.C. § 2255; 1589-91; 2241(c); 2251-52A; and 2421-23. The Court has supplemental jurisdiction over the state law claims by virtue of 28 U.S.C. § 1367, because the state law claims are so related to the federal law claims that they form part of the same case or controversy.

5.      Alternatively, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

6.      This Court has personal jurisdiction over Defendant under 10 *Del. C.* § 3104(c)(3) because Defendant committed tortious acts and/or omissions in this State and the causes of action enumerated herein arose in substantial part therefrom. The exercise of personal jurisdiction by this Court over Defendant is consistent with the United States Constitution because Defendant, by virtue of his acts and omissions within the State, has had sufficient minimum contacts with the State such that he could reasonably expect to be haled into court in this State. The exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.

7.     Venue is proper in this district under 28 U.S.C. § 1391(b) and/or (c) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District, and Defendant is subject to personal jurisdiction in this State.

## BACKGROUND OF THE DISPUTE

### Early Sexual Abuse And Commercial Sexual Exploitation

8.     Defendant Ronald Cohen began sexually abusing Plaintiff, his daughter, in approximately 1983—when she was about three years old. The first sexual abuse occurred at the family home in Newark, Delaware. Defendant forced Plaintiff to orally and/or manually stimulate him sexually. This sometimes resulted in Plaintiff being choked or suffocated.

9.     In the summer of 1985, when the family was living temporarily in Oklahoma, Defendant began to sell and traffic Plaintiff. Defendant and his then-wife (Plaintiff's mother) took a one-week trip to Canada and left Plaintiff and her brother with some family friends, a Hispanic couple and their children.[1] Early in the week, the father of this family informed Plaintiff that he had "purchased her virginity" from Defendant for $2,500.

10.    The daughter of the Oklahoma family informed Plaintiff that it was her "turn" now. The father repeatedly raped Plaintiff during that week and filmed numerous acts of sexual abuse. This had the blessing of, and was arranged and facilitated by, Defendant. He also sexually abused his own daughter, and he forced the children to be "sexual" together.

11.    After being raped, Plaintiff was so sore she could not go to the bathroom. The bathroom had floral wallpaper but because she was in such pain, the flowers looked wavy like insects crawling up the walls.

12.    The father of the Oklahoma family paddled Plaintiff with a large wooden paddle

---

[1]  Defendant knows the names, which will be provided to the Court, if required, at an appropriate time.

3

and threatened her that if she was not "good," he would take her away to Mexico. He also told her

he would kill her mother if Plaintiff told her about the movies they had made together. He said that

Plaintiff's younger brother would "avoid pain" if Plaintiff was good. The paddle that had been

used on Plaintiff ended up in the kitchen in the Cohen family home. Defendant displayed it to

Plaintiff on top of the kitchen cabinets as a reminder of the threats.

13.     Soon after Defendant and his then-wife returned from Canada, Defendant took the

family to a restaurant and sat in a booth with the Oklahoma family. Plaintiff was still physically

so sore that it was difficult to sit. When the mothers and younger children went to the bathroom,

Defendant was asked, in Plaintiff's presence, if she had "told." Defendant said no, patted Plaintiff

on the head, and said she was a good girl. The father of the Oklahoma family gave Defendant an

envelope that appeared to contain VHS tapes.

14.     Shortly after the week when Plaintiff was abused and raped, the Oklahoma family

moved away in the middle of the night with no explanation.

**Child Sexual Abuse And Trafficking In Delaware At The Family Home,
At "Prayer Meetings," And At "Board Meetings;" The Making And Sale Of Tapes**

15.     In the fall of 1985, Defendant and the family returned to Delaware (44 Vansant Rd.

Newark, DE), where the majority of the sexual abuse and commercial sexual exploitation occurred

over the next six years. Defendant molested or exploited Plaintiff for commercial sexual purposes

at least weekly. This included raping Plaintiff and forcing her to perform oral sex on Defendant.

Defendant also sodomized Plaintiff, which he called a "number 2 spanking." Defendant filmed sex

acts between himself and Plaintiff, other adults, and other children around Plaintiff's own age.

This child sexual abuse and exploitation took place at the family home, homes of friends, and the

offices of Defendant and/or his business or ministry partners.

16.     Defendant set up a video camera and a staged bedroom in the basement of the

family home, where some of the sex acts were performed and filmed. Plaintiff was sometimes drugged and placed in a room where men would enter and perform sex acts on her. Sometimes it was only one man, sometimes it was more than one. On at least one occasion, Plaintiff was brought to a pedophile party at a warehouse.

17.      Sometime between 1985 and 1987, Defendant purchased a VHS duplication machine and began duplicating the videos of child sexual abuse. Defendant took Plaintiff with him to the Newark (Delaware) Post Office to mail the material. He would sexually assault her in the parking lot of the library across the street immediately following the trips to the post office. Defendant told Plaintiff's mother that the videos were of him preaching. The names of these videos were "God Wants You Well," "A Yogi Meets the Messiah," and "Freedom From Your Past." The videos he sent through the mail contained Defendant's preaching, sexually explicit material, or both.

18.      Defendant hosted weekly prayer meetings at the family home from around 1989 to 1991.  Plaintiff was asked to come down in her nightgown into these prayers meetings like she was being "presented." She was usually given 2–3 capfuls of Benadryl—much higher than the recommended dose for a child. Plaintiff was terrified of falling asleep and terrified of the prayer meetings.   After at least one meeting Plaintiff was placed in her parents' bed, which was a waterbed. Defendant came into the room with two men, who gave Defendant cash. He told the men he would stand outside the door. The men raped Plaintiff. Plaintiff was sold for commercial sex on a weekly basis by Defendant in this time period.

19.      Men posing as travelling ministers would stay at the family home and purchase commercial sex with Plaintiff from Defendant. Defendant also took Plaintiff out of the house in the middle of the night to be sold at "board meetings" at Defendant's office. This occurred in a

building on Chapel Street in Newark, Delaware, off Main Street. Plaintiff was also sold at "meetings" at the office of one of Defendant's board members. The "meetings" may have been board meetings, prayer meetings, or just meetings of men. Defendant would take Plaintiff out of the house at night after the rest of the family was asleep. He made her lie on the floor of his red Pontiac car. During the meetings, Plaintiff would be placed in a small room and men would come into the room to sexually assault her. Men bought her from Defendant and engaged in sex with her.

20.     Plaintiff remembers Defendant and a man named Jeff having sex with her at the same time. Jeff had short blond hair and was shorter than Plaintiff's mother, so he was about 5'5" tall. Jeff claimed to be a travelling minister and stayed overnight. Plaintiff was gang raped by Jeff and Defendant that night. After this happened, Defendant sat on the floor, by Plaintiff's bed, crying and making threats to Plaintiff. He said if she told anyone she would end up in foster care or a homeless shelter and that he would be put in jail. He said that Plaintiff's mother would have a mental breakdown. He again insisted that Plaintiff not tell anyone what was happening. The next morning, Jeff was at the family breakfast table and Plaintiff did not want to be anywhere near him so she hugged the wall. This happened in Newark, Delaware.

21.     Defendant raped or sexually abused Plaintiff in the video store, behind the puppet stand in church, at the movie theatre, and at the basketball courts.

22.     Other men purchased sex with Plaintiff, from Defendant, in exchange for money or services. This happened in Delaware, in homes or offices.

23.     In addition to other child victims noted previously, Defendant brought other children into the family home to be sexually abused and exploited.

## Further Trafficking Across State Lines

24.     As noted previously, Defendant made sexually explicit tapes of child rape involving Plaintiff and sold the tapes across state lines. He invited "traveling ministers" and others to cross state lines to have sex with Plaintiff in Delaware. Additional acts of sexual abuse and trafficking across state lines are detailed below.

25.     When Plaintiff was about seven years old, Defendant took the family to Orlando, Florida. Defendant stated that this was in order to visit his "cousin"—a man named "Lawrence." Plaintiff remembers being taken to a very opulent house with dark red velvet curtains, red velvet couches, pillar beds with velvet duvet covers, gold wall paper, and an indoor-outdoor pool with a marble fountain. Plaintiff was told that Lawrence made his money smuggling diamonds from Africa.

26.     The first night in Orlando, Plaintiff was drugged with Benadryl and fell asleep. When she woke up, Lawrence was filming. Defendant and another man raped Plaintiff while Lawrence filmed.

27.     The second night in Orlando, Plaintiff was again drugged with Benadryl. She was awakened in the middle of the night by Defendant, who told her they were going to get a McDonald's hamburger. Plaintiff had to get in the car with Lawrence and the other man, who were in the front seats, while Defendant and Plaintiff were in the back. Instead of going to McDonald's, Plaintiff was taken to a warehouse that was smoky. There were lots of tables, and cardboard boxes of VHS tapes on the tables.  Plaintiff was very scared. She saw people dancing in cages and heard loud music. Plaintiff was put into a small room or closet. Her legs were shackled open with chains, like ankle cuffs.  There were two lights—one on each side of Plaintiff. Men came in and out of the room, having sex with her, until she passed out. When she woke up the next morning, she was

back at Lawrence's house.

28.     A couple from Defendant's "Bus Group" lived in Newark, New Jersey, and Defendant took his family to visit them once or twice a year from about 1985 to 1987. The couple had two children about Plaintiff's age. They were close family friends. Because their parents were close, Plaintiff played with the children often as a child. This was until Plaintiff was about 12 years old, when the couple divorced and moved away.

29.     At the home of the New Jersey couple, by arrangement with Defendant, Plaintiff was filmed while Defendant raped her. Plaintiff remembers being raped on the kitchen table while the camera was held low nearby. Plaintiff was crying and screaming. One of the men yelled at her to "shut up you f***ing little c**t" because she was "ruining the f***ing shot." The rapes left Plaintiff in pain. That same day, Plaintiff was taken to another room to sleep but heard the couple's daughter screaming. This was in Newark, New Jersey.

30.     Plaintiff remembers another time being filmed in the basement of the couple's home in Newark, New Jersey.  She was heavily drugged with Benadryl and woke up thinking "it's happening again." She was forced to perform oral sex on a girl while she was sleeping in a beanbag chair. She also remembers being forced to perform oral sex on a boy in that same basement, and being made to lie down on the bean bag chair while being sexually assaulted by an adult male.

31.     Plaintiff was extremely afraid of the male member of the New Jersey couple. One time, he placed a silver gun to her head.

**<u>Additional Threats To Plaintiff And Efforts To Hide The Abuse</u>**

32.     Plaintiff has been threatened repeatedly by Defendant and his accomplices. As described previously, the Oklahoma couple threatened to harm Plaintiff and her brother and mother, and to have Plaintiff taken to Mexico, or put in foster care. The large paddle used on her

in Oklahoma was displayed by Defendant as a threat. Additional threats and acts of physical and emotional coercion are detailed below.

33.     After acts of sexual abuse and molestation, Defendant would firmly tell Plaintiff: "Remember, Alicia, I never touched you."

34.     Defendant killed Plaintiff's new puppy in front of her to make sure she understood that she could not tell anyone what was happening. He lied to Plaintiff's mother about what happened to the puppy. The dog's name was "Freckles" and he was a cocker spaniel. This act was intended to, and did, inflict mental torture on Plaintiff.

35.     In 1989, Plaintiff was taken to a therapist because Plaintiff had been unable to sleep at night and was having angry outbursts, phobias, and panic attacks (all of these were consequences of the abuse and trauma that Plaintiff was undergoing on a daily basis). Defendant insisted on being present during every session. Defendant would sexually assault Plaintiff prior to these sessions for punishment and to insist on secrecy. Plaintiff did not say anything in these sessions because she was too afraid. The therapist concluded that Plaintiff and Defendant were not spending enough time together. This became an excuse for Defendant to take Plaintiff away from home even more often. For example, he took her to a Christian father-daughter camp where he raped her multiple times per day. He told her that he had the power to abuse any of the other children anytime he wanted to.

36.     At one point, in order to avoid discovery, Defendant took his children out of school and had them "home schooled." This gave him greater access to them. It also isolated them from friends and community.

37.     Over the years, Defendant has continued to threaten Plaintiff and intimidate her into silence. His common refrain is: "Remember, Alicia, I never touched you."

38.     When, as an adult, Plaintiff began to remember acts of abuse that had been suppressed in her memory, she confronted Defendant over the phone. His response was that Plaintiff was possessed by demons. He purported to "rebuke the demons out of [her]." He ended the conversation by saying in a calm, methodical voice: "Remember, Alicia, I never touched you." Then he hung up the phone.  This triggered memories of him saying this after every sexual assault, molestation, and sex trafficking incident.

39.     As a result of being abused, threatened, mentally tortured, traumatized, and coerced, Plaintiff could not and did not reveal the abuse to teachers, therapists, doctors, or any other people while the abuse was occurring and for many years thereafter. Plaintiff was too scared to talk and did not have the words to explain what was happening. Plaintiff, out of fear, repressed her thoughts and memories of what had happened.

**Laundering The Money And Using Ministry As Cover**

40.     As described above, Defendant claims to be—and at all pertinent times claimed to be—a religious minister. He sometimes used the titles "Reverend" or "Rev." He created and operated several endeavors posing as "ministries," including: Miracle Tabernacle Ministries, Messianic Tabernacle Ministries International, Travelling Ministers Fellowship, TMF Ministries, Yahweh Center, Ronald Cohen Ministries, The Aaliyah Project, and Wilmington Aaliyah. Defendant operates numerous websites that pose as ministries.

41.     Defendant used his religious façade, and his "ministries," as a cover for conducting child sexual abuse and child sex trafficking. Some examples have been cited previously: under the cover of "Travelling Ministers Fellowship," men would travel to the Cohen home to exploit Plaintiff and other children for money; explicit scenes of child sexual abuse were hidden within videotapes of Defendant preaching; and Plaintiff would be brought to ministry "board meetings"

10

to be raped.

42.     When Plaintiff was approximately nine years old, two Kenyan men slept over at the Cohen family home (44 Van Sant Road, Newark, Delaware). Defendant told Plaintiff they were missionaries. They were to sleep on the couch bed in the TV room. Plaintiff was given Benadryl to put her to sleep as her anxiety was high due to the overnight guests. The two men entered her room and she awakened. They took turns raping Plaintiff one at a time while the other watched. Defendant stood outside the door in the hallway. He whispered to the two men as they exited Plaintiff's room when they were finished. The next morning, the two men went with the family to Sunday Morning Service at the House of Praise.

43.     Defendant collected money as church or ministry "donations" for the sex acts he allowed others to perform on Plaintiff. Plaintiff has obtained handwritten ledgers that Defendant kept of those who donated to his ministries. Several names on the list are people who purchased Plaintiff for commercial sex when she was between the ages of seven and 11.

### End of Direct Sexual Abuse, But Trafficking And Trauma Continue

44.     When Plaintiff began menstruating in 1992, the direct sexual abuse by Defendant stopped. However, the threats to remain silent did not stop. The sex trafficking ring continued with other victims. Sexually explicit videos of Plaintiff were still in circulation—the dissemination of such materials "perpetuates the abuse initiated by the producer of the materials." *United States v. Goff*, 501 F.3d 250, 259 (3d Cir. 2007). The trauma did not end for Plaintiff and continues today.

45.     During seventh grade, Plaintiff began physically hurting herself. She would beat her head against the wall and the car windows and pick at her own skin. She would bite her flesh until she bled. During the time she was homeschooled, she would eat things that were not food, like paper, plastic, and rubber items. In about 1992 she was taken to see a psychiatrist in

11

Wilmington, Delaware for head banging, insomnia, and panic attacks.

46.     In 1998, Plaintiff left home for college. At age 19, she saw a therapist because she was suicidal and self-harming via cutting, burning, and suffocating herself by placing a plastic bag over her head. At that time, she could not verbalize the abuse in any real way and did not fully understand what had happened to her. Plaintiff remained vulnerable to suicidal ideation for 20 years.

47.     All of these conditions were the result of the childhood trauma inflicted on Plaintiff by Defendant.

48.     Due to the actions of Defendant, Plaintiff has suffered extreme mental, physical, psychological, and emotional trauma. She has spent an enormous amount of time and money seeing doctors, psychiatrists, counselors, and other therapists. Plaintiff anticipates that she will be dealing with the consequences of Defendant's actions for the rest of her life.

**Repression And Recovery Of Memories**

49.     In order to cope and survive, Plaintiff repressed the memories of what Defendant did to her. The trauma caused her to have dissociative amnesia. Plaintiffs' professional therapists have documented and verified this.

50.     As numerous courts have recognized, "the shock and confusion resultant from child molestation, often coupled with authoritative adult demands and threats for secrecy, may lead a child to deny or suppress such abuse from his or her consciousness." *Hearndon v. Graham*, 767 So. 2d 1179, 1186 (Fla. 2000). *See also R.L. v. Voytac*, 971 A.2d 1074, 1082 (N.J. 2009) (recognizing that child sexual abuse may cause psychological injury that the victim does not connect to the abuse until years after it occurs); *Keller v. Maccubbin*, 2012 Del. Super. LEXIS 229, *6–12 (Super. Ct. May 16, 2012) (recognizing "traumatic amnesia" from child sexual abuse: "As Delaware has come to realize, injury caused by child sexual abuse can, and does, extend far

12

beyond that which is associated with a 'typical' battery").

51.     Plaintiff's memory of the abuse began to be restored in the 2013–2014 timeframe. She began to have intense flashbacks. The first memories she started having were of her father's penis and the first time she was raped. In 2014, she started working with a therapist to understand what she was beginning to remember.

52.     Memories of the abuse detailed above began to come back slowly, over time, rather than all at once, and they have not stopped coming back. The memory of the trafficking in Orlando, Florida, for example, began to come back in 2018 during a phone conversation, and the other party to the conversation is able to verify it.

53.     Memories may be triggered by specific events or locations. For example, being in a movie theatre triggered a memory of Defendant forcing Plaintiff to perform oral sex on him in a movie theatre. Taking her daughter to get a puppy triggered the memory of Defendant killing Plaintiff's puppy in front of her as an act of intimidation. The triggering of memories of abuse are extremely traumatic to Plaintiff.

54.     Plaintiff's causes of action are not barred by any applicable statute of limitations. Each claim is brought within the specified time period after reasonable discovery of the claims and/or injuries. The doctrine of equitable tolling also applies under the circumstances described above, including the extreme trauma inflicted on Plaintiff, the repression of memories and/or dissociative amnesia, and the threats, lies, and fraud directed by Defendant toward Plaintiff.

## Summary

55.     Defendant repeatedly, over the course of eight years, raped, sodomized, and sexually abused Plaintiff, his young daughter. In addition to this direct, personal, sexual abuse

inflicted on Plaintiff, Defendant:

a.  Sold Plaintiff to numerous other men, who also raped her for money or other benefits;

b.  Filmed sex acts that were forced on Plaintiff and sold the images and videos;

c.  Allowed others to make similar videos and sell them;

d.  Raped and sexually abused other children, including those mentioned above;

e.  Crossed state lines numerous times for the purpose of committing sex crimes and child sex trafficking;

f.  Operated a sex trafficking ring with numerous child victims, numerous accomplices and perpetrators of sexual exploitation, numerous purchasers of illegal sex with children, and explicit sexual materials; and

g.  Physically and psychologically threatened Plaintiff to the point of mental torture, lied, laundered money, and took other actions to hide his crimes and silence Plaintiff forever.

56.  Plaintiff brings this action to hold Defendant accountable for what he did. She brings it to stop him from ever doing it again to other children. She brings it to help in her own healing process, which will continue for the rest of her life. She brings it to obtain compensation for the extreme harms done to her. She brings it to support other victims and survivors of child sexual abuse and human trafficking—to help empower them, encourage them to come forward, and let them know they have a voice. She brings it as a message to other exploiters and human traffickers: you will not get away with it; you will pay for your crimes.

## COUNT I

## HUMAN TRAFFICKING UNDER FEDERAL LAW—18 U.S.C. § 2255

### (Predicate Violations of 18 U.S.C. §§ 1589–91, 2241(c), 2242–43, 2251–52A, 2260, 2421–23)

57.  Plaintiff incorporates and realleges the allegations of ¶¶ 1–79 as if fully set forth herein.

14

58.     18 U.S.C. § 2255(a), as amended in 2018 by the "Protecting Young Victims From Sexual Abuse and Safe Sport Authorization Act," states as follows: "Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred. The court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate."

59.     While Plaintiff was a minor, she was a victim of violations of 18 U.S.C. §§ 1589, 1590, 1591, 2241(c), 2251, 2251A, 2252, 2252A, 2421, 2422, and 2423:

    a.     Defendant violated 18 U.S.C. § 1589(a) because he knowingly provided or obtained the labor or services of Plaintiff by force, threats of force, physical restraint, threats of physical restraint, threats of serious harm to Plaintiff or others, abuse or threatened abuse of legal process, and by means of a scheme, plan, or pattern intended to cause Plaintiff to believe that, if she did not perform such labor or services, Plaintiff or another person would suffer serious harm or physical restraint. These violations are detailed above. The labor that Plaintiff was forced to commit included pornographic sexual acts, and activities on camera, for which Defendant received substantial sums of money.

    b.     Defendant violated 18 U.S.C. § 1589(b) because he knowingly benefited,

financially or by receiving something of value, from participation in a venture which engaged in the providing or obtaining of labor or services of Plaintiff by force, threats of force, physical restraint, threats of physical restraint, threats of serious harm to Plaintiff or others, abuse or threatened abuse of legal process.

c.     Defendant violated 18 U.S.C. § 1590 because he knowingly recruited, harbored, transported, provided, and obtained Plaintiff for labor or services.

d.     Defendant violated 18 U.S.C. § 1591(a)(1) because he knowingly used interstate commerce to recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit Plaintiff to engage in commercial sex acts while under the age of 18.

e.     Defendant violated 18 U.S.C. § 1591(a)(2) because he knowingly benefited, financially or by receiving something of value, from participation in a venture that used interstate commerce to recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit Plaintiff to engage in commercial sex acts while under the age of 18.

f.     Defendant violated 18 U.S.C. § 2241(c) because he crossed a State line with intent to engage in a sexual act with a person who had not attained the age of 12 years (Plaintiff), and did engage in such sexual acts.

g.     Defendant violated 18 U.S.C. § 2251(a) because he employed, used, persuaded, induced, enticed, and coerced Plaintiff, while a minor, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct. Defendant knew or had reason to know that such visual

depictions would be transported or transmitted using the means or facilities of interstate commerce, including the mail.

h.     Defendant violated 18 U.S.C. § 2251(b) because, as a parent, he knowingly permitted his minor child to be involved in sexually explicit conduct for the purpose of producing visual depictions of such conduct.

i.     Defendant violated 18 U.S.C. § 2251A(a)(1) because, as a parent having custody or control of a minor, he sold or otherwise transferred custody or control of Plaintiff, or offered to sell or otherwise transfer custody of Plaintiff with knowledge that, as a consequence of the sale or transfer, Plaintiff would be portrayed in a visual depiction engaging in, or assisting another person to engage in, sexually explicit conduct.

j.     Defendant violated 18 U.S.C. § 2251A(a)(2) because, as a parent having custody or control of a minor, he sold or otherwise transferred custody or control of Plaintiff, or offered to sell or otherwise transfer custody of Plaintiff with intent to promote the engaging in of sexually explicit conduct by such minor for the purpose of producing visual depictions of such conduct.

k.     Defendant violated 18 U.S.C. § 2252 because he knowingly transported and shipped, using means of or affecting interstate commerce, visual depictions of a minor engaging in explicit sexual conduct. Further, he received and distributed such materials in a manner using or affecting interstate commerce.

l.     Defendant violated 18 U.S.C. § 2252A because he knowingly transported

17

and shipped child pornography using means of or affecting interstate commerce. Further, he reproduced, promoted, presented, received and distributed, in a manner using or affecting interstate commerce, visual depictions of actual minors engaging in sexually explicit conduct.

m.     Defendant violated 18 U.S.C. § 2421 because he knowingly transported Plaintiff in interstate or foreign commerce with the intent that Plaintiff engage in sexual activities for which any person can be charged with a criminal offense [specifically, adults having sex with children can be charged with criminal offenses].

n.     Defendant violated 18 U.S.C. § 2422 because, using the mail or other means of interstate commerce, he knowingly persuaded, induced, enticed, or coerced Plaintiff, who had not attained the age of 18 years, to engage in sexual activities for which any person can be charged with a criminal offense [specifically, adults having sex with children can be charged with criminal offenses].

o.     Defendant violated 18 U.S.C. § 2423 because he knowingly transported an individual who had not attained the age of 18 years (Plaintiff) in interstate commerce with the intent that Plaintiff engage in sexual activities for which any person can be charged with a criminal offense [specifically, adults having sex with children can be charged with criminal offenses]. Further, Defendant traveled in interstate commerce with a motivating purpose of engaging in illicit sexual conduct with another person (Plaintiff).

60.     A violation of any one of these statutes would be sufficient to confer liability on

Defendant under 18 U.S.C. § 2255. Defendant violated all of them.

61.     Plaintiff suffered personal injuries as a result of the violations of the aforementioned statutes. The injuries include physical as well as emotional, psychological, and traumatic injuries. The injuries are still occurring and will continue to occur in the future.

62.     In addition to statutory liquidated damages in the amount of $150,000, Plaintiff seeks actual damages and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred. Plaintiff seeks punitive damages and such other preliminary and equitable relief as the court determines to be appropriate, as expressly authorized by 18 U.S.C. § 2255(a).

63.     This action is brought within 10 years of the time that Plaintiff reasonably discovered the violations that form the basis of the claim and/or the injury that forms the basis of the claim.

## COUNT II

### SEXUAL ABUSE OF A MINOR BY AN ADULT—DELAWARE

**(Rape, Incest, Human Trafficking, Sexual Abuse of a Child By A Person in a Position of Trust, Sexual Extortion, Continuous Abuse of a Child, Dangerous Crime Against A Child Under 14, Offensive Touching, Indecent Exposure)**

64.     Plaintiff incorporates and realleges the allegations of ¶¶ 1–86 as if fully set forth herein.

65.     The acts of Defendant described above constitute sexual abuse of a minor by an adult under Delaware law, and particularly under 10 *Del. C.* § 8145. Under § 8145, a civil action may be pursued based upon the sexual abuse of a minor by an adult. Further, "[a] civil cause of action for sexual abuse of a minor shall be based upon sexual acts that would constitute a criminal offense under the Delaware Code. Such a civil action may be filed in Superior Court, and federal courts also have jurisdiction over such claims." *Quill v. Catholic Diocese of Wilmington, Inc.*,

2008 WL 193000, at *2 (D. Del. Jan. 23, 2008).

66.     The acts of Defendant described above constitute sexual acts that would constitute a criminal offense under the Delaware Code. Defendant's actions violated the following criminal laws:

a.      Defendant committed the criminal offense of Rape under 11 *Del. C.* §§ 770–773. Defendant intentionally engaged in sexual intercourse with another person, Plaintiff, who was under the age of 12. Defendant was also in a principal-accomplice relationship with others who raped Plaintiff, and is thereby guilty of those acts of rape.

b.      Defendant committed the criminal offense of Incest under 11 *Del. C.* § 766. Defendant engaged in sexual intercourse with Plaintiff, his daughter.

c.      Defendant committed the crime of Human Trafficking under 11 *Del. C.* § 787. Defendant knowingly recruited, transported, harbored, received, provided, obtained, isolated, maintained, advertised, solicited, and enticed an individual (Plaintiff) in furtherance of forced labor in violation of paragraph (b)(2) of § 787. Defendant knowingly recruited, transported, harbored, received, provided, obtained, isolated, maintained, advertised, solicited, and enticed an individual (Plaintiff) in furtherance of sexual servitude in violation of paragraph (b)(3) of § 787. Defendant knowingly used coercion to compel Plaintiff to provide labor or services, including pornography. Defendant knowingly maintained and made available a minor (Plaintiff) for the purpose of engaging the minor in commercial sexual activity. Defendant's actions created aggravating circumstances under §

787 because he used or threatened use of force against, abduction of, serious harm to, or physical restraint of the victim (Plaintiff).

d.      Defendant committed the criminal offense of Sexual Abuse of a Child by a Person in a Position of Trust, Authority or Supervision under 11 *Del. C.* § 778. Defendant stood in a position of trust, authority or supervision over Plaintiff, a child under the age of 16, when the acts described above were committed. Defendant intentionally engaged in sexual intercourse, sexual penetration, sexual extortion, and sexual abuse. Upon information and belief, Defendant committed these acts against multiple children.

e.      Defendant committed the criminal offense of Sexual Extortion under 11 *Del. C.* § 774. Defendant intentionally compelled or induced another person (Plaintiff) to engage in any sexual act involving contact, penetration or intercourse with Defendant or another or others by means of instilling in the victim (Plaintiff) a fear that, if such sexual act is not performed, the defendant or another would cause physical injury to someone.

f.      Defendant committed the criminal offense of Continuous Abuse of a Child under 11 *Del. C.* § 776. Defendant, while residing in the same home with Plaintiff, a minor child, intentionally engaged in three or more acts of sexual conduct with a child under the age of 18 years of age over a period of time, not less than 3 months in duration.

g.      Defendant committed the criminal offense of Dangerous Crime Against a Child Under 14 under 11 *Del. C.* § 777. Under § 777, a "dangerous crime against a child" means "any criminal sexual conduct against a minor under

the age of 14 years." Defendant repeatedly committed criminal sexual conduct against Plaintiff while she was under the age of 14.

h.     Defendant committed the criminal offense of Indecent Exposure under 11 *Del. C.* § 765. Under § 765, "[a] male is guilty of indecent exposure in the second degree if he exposes his genitals or buttocks under circumstances in which he knows his conduct is likely to cause affront or alarm to another person." Defendant, a male, exposed himself to Plaintiff under circumstances in which he knew would cause affront or alarm to Plaintiff.

i.     Defendant committed the criminal offense of Offensive Touching under 11 *Del. C.* § 601. Defendant intentionally touched another person (Plaintiff) either with a member of his body or with any instrument, knowing that Defendant was thereby likely to cause offense or alarm to Plaintiff. Further, Defendant struck Plaintiff with a bodily fluid, knowing that he was thereby likely to cause offense or alarm to Plaintiff.

67.     A violation of any one of these statutes would be sufficient to confer liability on Defendant under 10 *Del. C.* § 8145. Defendant violated all of them.

68.     Plaintiff was injured by Defendant's actions, as described above.

69.     There is no limitations period for sexual abuse of a minor by an adult in Delaware under 10 *Del. C.* § 8145.

70.     Should a statute of limitations other than § 8145 be applied, Plaintiff avers that the "discovery rule" applies, and she did not reasonably discover her claims or injuries until recently. Plaintiff avers that the statute of limitations was tolled, or equitably tolled, because of the extreme trauma inflicted by Defendant, his threats and lies, and the repression of memories and/or

dissociative amnesia suffered by Plaintiff.

## COUNT III

## ASSAULT AND BATTERY—DELAWARE

71.     Plaintiff incorporates and realleges the allegations of ¶¶ 1–93 as if fully set forth herein.

72.     Defendant committed assault upon Plaintiff by taking actions intended to create a reasonable apprehension of imminent harm. The actions by Defendant were harmful and offensive. The actions by Defendant created in Plaintiff a reasonable apprehension of imminent harm.

73.     Defendant committed battery upon Plaintiff by taking actions with an intent to cause harmful or offensive contact. The actions by Defendant did result in harmful or offensive contact to Plaintiff.

74.     Plaintiff did not actually, or legally, consent to the actions taken by Defendant.

75.     Plaintiff has been injured by Defendant's actions, as described above.

76.     This cause of action falls within the Delaware rule that there is no limitations period for sexual abuse of a minor by an adult in Delaware.

77.     Should a statute of limitations other than § 8145 be applied, Plaintiff avers that the "discovery rule" applies, and she did not reasonably discover her claims or injuries until recently. Plaintiff avers that the statute of limitations was tolled, or equitably tolled, because of the extreme trauma inflicted by Defendant, his threats and lies, and the repression of memories and/or dissociative amnesia suffered by Plaintiff.

## COUNT IV

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS—DELAWARE

78.     Plaintiff incorporates and realleges the allegations of ¶¶ 1–100 as if fully set forth herein.

79.     Under Delaware law, a person who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for any associated bodily harm.

80.     Defendant committed the tort of intentional infliction of emotional distress. The actions described above were intentional or reckless. The actions of Defendant were extreme and outrageous in that they exceeded the bounds of decency and are regarded as intolerable in a civilized community. Defendant intended to cause, or recklessly caused, severe emotional distress to Plaintiff.

81.     Plaintiff was, in fact, severely distressed emotionally by the conduct of Defendant. She remains distressed today, and will be emotionally distressed in the future due to Defendant's actions. She also suffered bodily harm, as described above.

82.     This cause of action falls within the Delaware rule that there is no limitations period for sexual abuse of a minor by an adult in Delaware.

83.     Should a statute of limitations other than § 8145 be applied, Plaintiff avers that the "discovery rule" applies, and she did not reasonably discover her claims or injuries until recently. Plaintiff avers that the statute of limitations was tolled, or equitably tolled, because of the extreme trauma inflicted by Defendant, his threats and lies, and the repression of memories and/or dissociative amnesia suffered by Plaintiff.

**COUNT V**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS—DELAWARE**

84.     Plaintiff incorporates and realleges the allegations of ¶¶ 1–106 as if fully set forth herein.

85.     Under Delaware law, the elements of a claim of negligent infliction of emotional distress are similar to the elements of a claim of intentional or reckless infliction, except that the

Defendant's actions are negligent rather than intentional or reckless. Further, a claim for negligent infliction requires some physical manifestation of the emotional harm caused. The requisite elements are present here.

86.     Defendant committed the tort of negligent infliction of emotional distress. The actions described above were negligent, if not intentional or reckless. The actions of Defendant were extreme and outrageous in that they exceeded the bounds of decency and are regarded as intolerable in a civilized community. Defendant negligently caused severe emotional distress to Plaintiff.

87.     Plaintiff was, in fact, severely distressed emotionally by the conduct of Defendant. She remains distressed today, and will be emotionally distressed in the future due to Defendant's actions.

88.     Plaintiff has experienced physical manifestations of the emotional harm caused by Defendant, as described above. Plaintiff has suffered at various times, and continues to suffer, such physical consequences as insomnia, picking at her skin, cutting and burning, hitting her head against walls and windows, inability to work, a suicide attempt, and numerous types of pain.

89.     This cause of action falls within the Delaware rule that there is no limitations period for sexual abuse of a minor by an adult in Delaware.

90.     Should a statute of limitations other than § 8145 be applied, Plaintiff avers that the "discovery rule" applies, and she did not reasonably discover her claims or injuries until recently. Plaintiff avers that the statute of limitations was tolled, or equitably tolled, because of the extreme trauma inflicted by Defendant, his threats and lies, and the repression of memories and/or dissociative amnesia suffered by Plaintiff.

## COUNT VI

## FALSE IMPRISONMENT—DELAWARE

91.     Plaintiff incorporates and realleges the allegations of ¶¶ 1–113 as if fully set forth herein.

92.     Under Delaware law, the elements of a claim for false imprisonment are (a) a restraint, which is (b) unlawful and (c) against one's will. The restraint may be accomplished by physical force, by threats of force or intimidation, or by assertion of legal authority. False imprisonment is generally defined as the deprivation of the liberty of another without her consent and without legal justification.

93.     Defendant restrained Plaintiff physically and by threats of force and intimidation. Defendant, an adult male, was able to force Plaintiff, a young child, to go wherever he wanted. He was able to physically hold her down while raping her. He physically restricted her movements. He restricted her movements by threatening her with harm if she did not submit to his will.

94.     The restraints imposed by Defendant on Plaintiff were unlawful. There can be nothing more unlawful than for a father to rape his young daughter, sell her to be raped by others, and sell videos of her being raped.

95.     The restraints were imposed on Plaintiff by Defendant against her will. No child wishes to be, or can legally consent to being, raped repeatedly for years by her father and numerous men, including strangers.

96.     Plaintiff's liberty was taken away from her. This is the essence of slavery. She was enslaved by Defendant.

97.     Plaintiff has been injured by Defendant's actions and threats, as described above.

98.     This cause of action falls within the Delaware rule that there is no limitations period for sexual abuse of a minor by an adult in Delaware.

99.     Should a statute of limitations other than § 8145 be applied, Plaintiff avers that the "discovery rule" applies, and she did not reasonably discover her claims or injuries until recently. Plaintiff avers that the statute of limitations was tolled, or equitably tolled, because of the extreme trauma inflicted by Defendant, his threats and lies, and the repression of memories and/or dissociative amnesia suffered by Plaintiff.

## COUNT VII

## HUMAN TRAFFICKING—DELAWARE

100.     Plaintiff incorporates and realleges the allegations of ¶¶ 1–122 as if fully set forth herein.

101.     Defendant committed the tort of human trafficking under 11 *Del. C.* § 787. Defendant trafficked Plaintiff. He is a human trafficker.

102.     Defendant knowingly recruited, transported, harbored, received, provided, obtained, isolated, maintained, advertised, solicited, and enticed an individual (Plaintiff) in furtherance of forced labor in violation of paragraph (b)(2) of § 787.

103.     Defendant knowingly recruited, transported, harbored, received, provided, obtained, isolated, maintained, advertised, solicited, and enticed an individual (Plaintiff) in furtherance of sexual servitude in violation of paragraph (b)(3) of § 787.

104.     Defendant knowingly used coercion to compel Plaintiff to provide labor or services, including pornography.

105.     Defendant knowingly maintained and made available a minor (Plaintiff) for the purpose of engaging the minor in commercial sexual activity.

106.     Defendant's actions created aggravating circumstances under § 787 because he used or threatened use of force against, abduction of, serious harm to, or physical restraint of the victim (Plaintiff).

107.     A Plaintiff injured by a violation of § 787 may bring a civil action.

108.     Under § 787(d) and (i), Plaintiff is entitled to restitution, compensatory damages, punitive damages, injunctive relief, and any other appropriate relief. Plaintiff is entitled to reasonable attorneys' fees and costs, including reasonable fees for expert witnesses.

109.     Section 787(i)(3) states that a civil action under § 787 must be brought within 5 years after the victim is "freed from the human trafficking situation." Plaintiff avers that she did not become truly free from the trafficking situation more than five years ago. She still suffers from the effects of it, still feels afraid due to threats, intimidation and stalking, and is not truly free. In addition, Plaintiff avers that the "discovery rule" should be applied to actions under § 787, and she did not reasonably discover her claims or injuries more than five years ago. Plaintiff avers that the statute of limitations was tolled, or equitably tolled, because of the extreme trauma inflicted by Defendant, his threats and lies, and the repression of memories and/or dissociative amnesia suffered by Plaintiff. Finally, Plaintiff avers that the statute of limitations of 10 *Del. C.* § 8145 should be applied to human trafficking that involves the sexual abuse of a minor by an adult, and that there is, therefore, no limitations period for this claim.

## COUNT VIII

## SEXUAL BATTERY OF A MINOR—FLORIDA

110.     Plaintiff incorporates and realleges the allegations of ¶¶ 1–132 as if fully set forth herein.

111.     Under FLA. STAT. § 794.011, "sexual battery" means "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object." Defendant committed sexual battery on Plaintiff and sold her to be sexually battered by others.

112.     A person 18 years of age or older who commits sexual battery upon, or in an attempt

to commit sexual battery injures the sexual organs of, a person less than 12 years of age commits a capital felony. Defendant repeatedly committed capital felonies upon Plaintiff.

113.    Plaintiff was physically helpless to resist. On at least one occasion, she was shackled. Defendant coerced Plaintiff to submit by threatening to use force or violence likely to cause serious personal injury on Plaintiff, and Plaintiff reasonably believed that Defendant had the present ability to execute the threats. Defendant coerced Plaintiff to submit by threatening to retaliate against her, or another person, and Plaintiff reasonably believed that Defendant had the ability to execute the threats in the future.

114.    Defendant was in a position of familial or custodial authority to a person less than 18 years of age (Plaintiff) and solicited Plaintiff to engage in an act that constituted sexual battery. Defendant violated § 794.011(8) and committed sexual battery against Plaintiff. Consent is not a defense under this section, nor did it actually or legally exist.

115.    Defendant committed battery upon Plaintiff by taking actions with an intent to cause harmful or offensive contact. The actions by Defendant did result in harmful or offensive contact to Plaintiff.

116.    Under FLA. STAT. § 95.11(9), "An action related to an act constituting a violation of § 794.011 involving a victim who was under the age of 16 at the time of the act may be commenced at any time."

117.    Plaintiff was injured by the sexual battery committed by Defendant.

118.    This cause of action applies to any and all actions of Defendant that took place wholly or partially in Florida, or had consequences in that State.

## COUNT IX

## HUMAN TRAFFICKING—FLORIDA

119.    Plaintiff incorporates and realleges the allegations of ¶¶ 1–141 as if fully set forth herein.

120.    Defendant committed the crime and tort of human trafficking under FLA. STAT. § 787.06. Defendant trafficked Plaintiff. He is a human trafficker.

121.    Defendant knowingly transported, solicited, recruited, harbored, provided, enticed, maintained, and obtained another person (Plaintiff) for the purpose of exploitation of that person in violation of paragraph (2)(d) of § 787.06.

122.    Defendant knowingly, or in reckless disregard of the facts, engaged in human trafficking, attempted to engage in human trafficking, and benefited financially by receiving something of value from participation in a venture that has subjected a person (Plaintiff) to human trafficking under paragraph (3) of § 787.06. This is a felony in Florida and also subjects Defendant to civil liability.

123.    Defendant transferred or transported a child under the age of 18 (Plaintiff) from outside Florida to within Florida for commercial sexual activity under paragraph (3)(f)(1) of § 787.06.

124.    Under paragraph (4)(a) of § 787.06, "Any parent, legal guardian, or other person having custody or control of a minor who sells or otherwise transfers custody or control of such minor, or offers to sell or otherwise transfer custody of such minor, with knowledge or in reckless disregard of the fact that, as a consequence of the sale or transfer, the minor will be subject to human trafficking commits a life felony." Defendant committed a life felony under this statute, and is subject to civil liability.

125.    Human trafficking under § 787.06, as committed by Defendant, is expressly within the definition of "sexual abuse of a child" in FLA. STAT. § 39.01(77).

126.    Human trafficking and sexual abuse of a child give rise to civil liability:

      a.    Sexual abuse of a child under § 39.01(77), which includes human trafficking of a child, expressly falls within the definition of "intentional torts" in FLA. STAT. § 95.11(7), for which a civil cause of action exists.

      b.    FLA. STAT. § 772.104 creates a civil action for violators of § 772.103 "due to sex trafficking or human trafficking." Because Defendant committed human trafficking and sex trafficking, he violated § 772.103, and is subject to civil liability under § 772.104.

127.    Plaintiff was injured by being trafficked by Defendant.

128.    Defendant profited from trafficking Plaintiff.

129.    The applicable statute of limitations is paragraph (9) of FLA. STAT. 95.11. As noted in ¶ 139 above, this action is not barred under § 95.11(9). Nor is it barred under § 95.11(7). That provision states that a civil action for abuse may be brought "within 4 years from the time of discovery by the injured party of both the injury and the causal relationship between the injury and the abuse, whichever occurs later." Florida recognizes that repressed memories or dissociative amnesia stop the statute of limitations from running, or beginning to run. Plaintiff discovered in 2018—by way of recovered memories—the trafficking inflicted on her in Florida (additional memories of the Florida events are still being restored in 2019). This is less than four years before the commencement of this suit. Plaintiff further avers that the statute of limitations was tolled, or equitably tolled, because of the extreme trauma inflicted by Defendant, his threats and lies, and the repression of memories and/or dissociative amnesia suffered by Plaintiff.

130.    This cause of action applies to any and all actions of Defendant that took place wholly or partially in Florida, or had consequences in that State.

**COUNT X**

**INCEST—FLORIDA**

131.    Plaintiff incorporates and realleges the allegations of ¶¶ 1–153 as if fully set forth herein.

132.    Under FLA. STAT. § 826.04, one who knowingly has sexual intercourse with a person to whom he is related by lineal consanguinity commits incest, a felony. Defendant is related to Plaintiff by lineal consanguinity because he is her father. Defendant knowingly had sexual intercourse with Plaintiff. Defendant violated § 826.04, committed a felony, and is subject to civil liability.

133.    Incest gives rise to civil liability. Incest under § 826.04 expressly falls within the definition of "intentional torts" in FLA. STAT. § 95.11(7), for which a civil cause of action exists.

134.    Plaintiff was injured by the incest committed upon her by Defendant.

135.    The applicable statute of limitations is either paragraph (7) or paragraph (9) of FLA. STAT. 95.11. As noted in ¶ 139 and ¶ 152 above, this action is not barred under either paragraph of § 95.11.

136.    This cause of action applies to any and all actions of Defendant that took place wholly or partially in Florida, or had consequences in that State.

**COUNT XI**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS—FLORIDA**

137.    Plaintiff incorporates and realleges the allegations of ¶¶ 1–159 as if fully set forth herein.

138.    Under Florida law, the elements of an action for intentional infliction of emotional distress are: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe.

32

139.     Defendant committed the tort of intentional infliction of emotional distress. The actions described above were deliberate or reckless. The actions of Defendant were outrageous in that they exceeded the bounds of decency and are regarded as intolerable in a civilized community.

140.     Plaintiff suffered severe emotional distress caused by the conduct of Defendant. She remains distressed today, and will be emotionally distressed in the future due to Defendant's actions.

141.     Plaintiff has been injured by Defendant's actions and threats, as described above.

142.     The applicable statute of limitations is paragraph (9), paragraph (7), or paragraph (3)(o) of FLA. STAT. § 95.11. As noted in ¶ 139 above, this action is not barred under § 95.11(9), and as noted in ¶ 152 above, it is not barred under § 95.11(7). If § 95.11(3)(o) applies, Florida recognizes that repressed memories or dissociative amnesia stop the statute of limitations from running, or beginning to run. Plaintiff did not discover—by way of recovered memories—the trafficking inflicted on her in Florida until 2018, i.e., less than four years before the commencement of this suit. Plaintiff further avers that the statute of limitations was tolled, or equitably tolled, because of the extreme trauma inflicted by Defendant, his threats and lies, and the repression of memories and/or dissociative amnesia suffered by Plaintiff.

143.     This cause of action applies to any and all actions of Defendant that took place wholly or partially in Florida, or had consequences in that State.

## COUNT XII

### FALSE IMPRISONMENT—FLORIDA

144.     Plaintiff incorporates and realleges the allegations of ¶¶ 1–166 as if fully set forth herein.

145.     Under FLA. STAT. § 787.02, false imprisonment is committed when a person forcibly, by threat, or secretly confines, abducts, imprisons, or restrains another person without

lawful authority against her or his will. This is a third degree felony. However, it becomes a first degree felony when it is committed along with child abuse, human trafficking, sexual battery, or child exploitation. Defendant committed a first degree felony and is also subject to civil liability for falsely imprisoning Plaintiff.

146.    Defendant restrained Plaintiff physically in shackles and by threats of force and intimidation. Defendant, an adult male, was able to force Plaintiff, a young child, to go wherever he wanted. He was able to physically hold her down while raping her. He physically restricted her movements. He restricted her movements by threatening her with harm if she did not submit to his will. He shackled her in a warehouse and allowed other men to rape her.

147.    The restraints imposed by Defendant on Plaintiff were unlawful. There can be nothing more unlawful than for a father to rape his young daughter, shackle and sell her to be raped by others, and to sell videos of her being raped.

148.    The restraints were imposed on Plaintiff by Defendant against her will. No child wishes to be, or can legally consent to being, raped repeatedly for years by her father and numerous men, including strangers.

149.    Plaintiff's liberty was taken away from her. This is the essence of slavery. She was enslaved by Defendant.

150.    Plaintiff has been injured by Defendant's actions and threats, as described above.

151.    The applicable statute of limitations is paragraph (9), paragraph (7), or paragraph (3)(o) of FLA. STAT. § 95.11. As noted in ¶ 139 above, this action is not barred under § 95.11(9), and as noted in ¶ 152 above, it is not barred under § 95.11(7). If § 95.11(3)(o) applies, Florida recognizes that repressed memories or dissociative amnesia stop the statute of limitations from running, or beginning to run. Plaintiff did not discover—by way of recovered memories—the

trafficking inflicted on her in Florida until 2018, less than four years before the commencement of this suit. Plaintiff further avers that the statute of limitations was tolled, or equitably tolled, because of the extreme trauma inflicted by Defendant, his threats and lies, and the repression of memories and/or dissociative amnesia suffered by Plaintiff.

152.    This cause of action applies to any and all actions of Defendant that took place wholly or partially in Florida, or had consequences in that State.

**COUNT XIII**

**<u>CHILD SEXUAL ABUSE—NEW JERSEY</u>**

153.    Plaintiff incorporates and realleges the allegations of ¶¶ 1–175 as if fully set forth herein.

154.    The New Jersey Child Sexual Abuse Act ("CSAA"), N.J.S.A. § 2A:61B-1, defines sexual abuse as "an act of sexual contact or sexual penetration between a child under the age of 18 years and an adult." Further, "[a] parent . . . who knowingly permits or acquiesces in sexual abuse by any other person also commits sexual abuse." Under both of these definitions, Defendant committed child sexual abuse against Plaintiff under the CSAA.

155.    The CSAA provides for a civil action by the victim of child sexual abuse against the perpetrator.

156.    The CSAA provides that the statute of limitations does not begin running until "reasonable discovery of the injury and its causal relationship to the act of sexual abuse." New Jersey recognizes the reality of repressed memories in child sexual abuse cases. Plaintiff did not reasonably discover some of the New Jersey incidents of abuse until recently.

157.    The CSAA also provides for tolling of the statutes of limitations "because of the plaintiff's mental state, duress by the defendant, or any other equitable grounds." All three factors

are present here, and the statute of limitations should be deemed to have been tolled until the filing of suit.

158.    Under N.J.S.2A:14-2, as amended effective December 1, 2019, victims of child sexual abuse may bring civil actions at any time before the victim reaches the age of 55, or seven years after reasonable discovery, whichever comes later. Victims whose claims expired under previous statutes of limitations have two years to bring civil suits after the effective date of the new law. Plaintiff's New Jersey claims come within this statute and are not barred by the statute of limitations.

159.    Plaintiff has been injured by Defendant's actions, as described above.

160.    This cause of action applies to any and all actions of Defendant that took place wholly or partially in New Jersey, or had consequences in that State.

## COUNT XIV

## HUMAN TRAFFICKING—NEW JERSEY

161.    Plaintiff incorporates and realleges the allegations of ¶¶ 1–183 as if fully set forth herein.

162.    Defendant committed the crime and tort of human trafficking under N.J.S.A. §2C:13-8. Defendant trafficked Plaintiff. He is a human trafficker.

163.    Defendant knowingly held, recruited, lured, enticed, harbored, transported, provided, and maintained another person (Plaintiff) to engage in sexual activity and to provide labor or services in violation of paragraph (1)(a)(1) of § 2C:13-8.

164.    Defendant used physical force, abuse, threats of force and abuse, physical restraint, fraud, deceit and misrepresentation in order to accomplish his trafficking scheme.

165.    Defendant received something of value from participation as an organizer,

supervisor, financier, or manager in his trafficking scheme in violation of paragraph (1)(a)(2) of § 2C:13-8.

166.    Defendant knowingly held, recruited, lured, enticed, harbored, transported, provided, and obtained a child under 18 years of age (Plaintiff), to engage in sexual activity in violation of paragraph (1)(a)(3) of § 2C:13-8.

167.    Plaintiff is entitled to restitution under paragraph (1)(e) of § 2C:13-8. The value of the restitution shall include the value of the victim's labor or services or the value received by Defendant.

168.    Plaintiff is entitled to bring a civil action under N.J.S.A. § 2C:13-8.1. Plaintiff is entitled to recover appropriate legal or equitable relief, including damages for pain and suffering, recovery of reasonable costs for necessary medical, dental, and psychological services and punitive damages. She is further entitled to an award damages in an amount that is the greater of (1) the gross income or value to the defendant of Plaintiff's labor or services; or (2) the value of Plaintiff's labor or services as determined by the "New Jersey Prevailing Wage Act."  In addition to any damages, penalty, injunction, or other appropriate relief awarded, the court may award to Plaintiff her reasonable attorneys' fees and costs.

169.    Plaintiff was injured by being trafficked by Defendant.

170.    Defendant profited from trafficking Plaintiff.

171.    The statute of limitations does not begin running until reasonable discovery of the injury and its causal relationship to the act of sexual abuse. New Jersey recognizes the reality of repressed memories in child sexual abuse cases. Plaintiff did not reasonably discover some of the New Jersey incidents of abuse until recently.

172.    The statute of limitations may be tolled because of the plaintiff's mental state,

duress by the defendant, or any other equitable grounds. All three factors are present here, and the statute of limitations should be deemed to have been tolled until the filing of suit.

173.    Under N.J.S.2A:14-2, as amended effective December 1, 2019, victims of child sexual abuse may bring civil actions at any time before the victim reaches the age of 55, or seven years after reasonable discovery, whichever comes later. Victims whose claims expired under previous statutes of limitations have two years to bring civil suits after the effective date of the new law. Plaintiff's New Jersey claims come within this statute and are not barred by the statute of limitations.

174.    This cause of action applies to any and all actions of Defendant that took place wholly or partially in New Jersey, or had consequences in that State.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues which can be heard by a jury.

## VERIFICATION

A Verification, signed by Plaintiff, is filed concurrently with this First Amended Verified Complaint.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A.    Enter judgment in Plaintiff's favor, and against Defendant, on all counts;

B.    Award Plaintiff $150,000 in statutory damages;

C.    Award Plaintiff her actual compensatory damages, including damages for pain and suffering, severe emotional distress, lost income, lost value of labor expended, and costs incurred (including medical, psychological, and counseling fees) due to the actions of Defendant as described herein;

D.    Award Plaintiff treble damages;

E.       Award Plaintiff punitive damages;

F.       Award Plaintiff restitution;

G.       Require the disgorgement of profits by Defendant;

H.       Award to Plaintiff her reasonable attorneys' fees, costs, and other fees, including expert fees as permitted by relevant statutes;

I.       Enter a temporary and permanent injunction and/or restraining order against Defendant, prohibiting him from contacting her in any way, including through intermediaries other than Plaintiff's counsel, and from touching or speaking to her or threatening her, and from coming within 100 feet of her;

J.       Enter a temporary and permanent injunction and/or restraining order against Defendant, prohibiting him from having any role with any organization that serves children, including orphanages, churches, and children's ministries; and

K.       Grant Plaintiff all other and further relief to which she may be entitled.


Dated: February 14, 2020                    **K&L GATES LLP**

                                            /s/ *Steven L. Caponi*
                                            Steven L. Caponi, Esq. (No. 3484)
                                            Matthew B. Goeller (No. 6283)
                                            600 N. King Street
                                            Suite 901
                                            Wilmington, DE 19801
                                            Phone: 302.416.7080
                                            steven.caponi@klgates.com
                                            matthew.goeller@klgates.com

                                            OF COUNSEL:

                                            Daniel J. Stephenson, Esq.
                                            Emily Mather, Esq.
                                            K&L GATES LLP
                                            4350 Lassiter at North Hills Ave.

Raleigh, NC 27609
Phone: 919.743.7300
dan.stephenson@klgates.com
emily.mather@klgates.com

Stephanie Richard, Esq.
Coalition to Abolish Slavery & Trafficking
5042 Wilshire Blvd. #586
Los Angeles, CA 90036
Phone: 213.365.5249
stephanie@castla.org

Paula Tobler, Esq.
King & Siegel LLP
724 S. Spring St.
Los Angeles, CA  90014
Phone: 213.465.4802
paula@kingsiegel.com

*Attorneys for Plaintiff Alicia A. Cohen*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ALICIA A. COHEN,

               Plaintiff,

    v.

RONALD A. COHEN, a/k/a Rafi Cohen, Raphael
Cohen, Rapha-El Cohen, Raphael Chaim Ha
Cohen, Raphael Chaim Cohen, Ron Cohen, and
Ronnie Cohen,

               Defendant.

C.A. No. 19-1219-MN

**JURY TRIAL DEMANDED**

### VERIFICATION OF ALICIA A. COHEN

STATE OF Delaware       )
                         )
COUNTY OF New Castle   )

    I, Alicia A. Cohen, Plaintiff in the above-referenced matter, having been duly sworn, do hereby depose and state that I have reviewed the First Amended Verified Complaint for Child Sexual Abuse and Human Trafficking, and the statements set forth therein are true and correct to the best of my knowledge, information, and belief. I am duly authorized to execute this Verification.

                                                        Alicia A. Cohen

SWORN TO AND SUBSCRIBED before me this ____ day of February, 2020.

Notary Public

My Commission Expires: 7/25/2020